**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LAETITIA G. STANO,

       Plaintiff,

v.                                                    Case No. 06-CV-10842-DT

LUMBERMENS MUTUAL CASUALTY
COMPANY,

       Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT
AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT**

Plaintiff Laetitia G. Stano filed this action on November 28, 2005 in Macomb

County Circuit Court. Plaintiff filed her complaint under the Employee Retirement

Income Security Act ("ERISA"), 29, U.S.C. § 1001 *et seq.*, and seeks to recover benefits

under 29 U.S.C. § 1132(a)(1)(B). Defendant Broadspire Services, Inc. ("Broadspire")

removed the action to this court, and through an April 17, 2006 stipulation and order,

Lumbermens Mutual Casualty Co. ("Lumbermens") replaced Broadspire as the

defendant in this case.

Currently pending before the court are cross-motions for judgment. The court

has reviewed the motions and determined that a hearing on the matter is unnecessary.

*See* E.D. Mich. LR 7.1(e)(2). The court issues the following findings of fact and

conclusions of law, and for the reasons stated below, the court will grant Defendant's

motion and deny Plaintiff's motion.

## I.  STANDARD OF REVIEW

Denial of benefits under an ERISA plan by the plan administrator is reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber, Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan provides the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court reviews that administrator's determination for arbitrariness or caprice. *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002); *Miller v. Metro Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).  Both sides have agreed that the arbitrary and capricious standard of review applies in this case.

Under the arbitrary and capricious standard of review, the court must determine whether the decision to deny Plaintiff benefits was rational and consistent with the terms of the plan.  *Miller*, 925 F.2d at 984; *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

> [T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

*Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted).  In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious."  *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

## II.  FINDINGS OF FACT

1.  This action involves a claim under ERISA, 29 U.S.C. §§ 1001-1461, for review of a denial of long-term disability insurance benefits.  (Compl. at ¶ 1.)

2.  As a registered nurse for Henry Ford Health System, Plaintiff participated in the company's long-term disability insurance plan ("Plan"), which provided monthly benefits if she met the Plan's definition of disability.  (*Id.* at ¶ 4, 5.)

3.  The Plan is insured by Lumbermens.  (AR at 712.)

4.  The Plan specifically provided Lumbermens with the discretionary authority to make claims and interpret the terms of the Plan.  (AR at 27.)

5.  Plaintiff began receiving long-term disability benefits effective June 21, 2003, because a February 14, 2003 spinal fusion temporarily prevented her from performing her job as a nurse.  (AR at 458-60.)

6.  After Plaintiff began receiving benefits, Defendant required Plaintiff to apply for benefits through the Social Security Administration (SSA), and Defendant hired Allsup, Inc. to assist Plaintiff in her ultimately successful application for social security disability benefits.  (AR at 62-63.)

7.  On June 2, 3004, Plaintiff visited Dr. Mahmood in the outpatient neurosurgery clinic and had her back brace removed.  (AR at 271.)

8.  Plaintiff's employment as a nurse is most reasonably characterized as medium work, which requires the ability to occasionally lift fifty pounds, frequently lift twenty pounds, and constantly lift ten pounds.  (AR at 152.)

9.  During the initial twenty-four month period of disability under the Plan, Plaintiff qualified for benefits so long as she had a physical or mental condition that

prevented her "from performing, during the Benefits Qualifying Period and the following twenty four months, the Essential Functions of [her] Regular Occupation."  (AR at 719.)

10.   Plaintiff's initial twenty-four month "own occupation period of disability expired on June 21, 2005."  (AR at 342.)

11.   After the initial twenty-four month period of disability under the Plan, Plaintiff "must be so prevented from performing the Essential Functions of any Gainful Occupation that your training, education and experience would allow [her] to perform."  (AR at 342.)

12.   The Plan required Plaintiff to periodically submit proof, upon request, that she was "unable to work due to sickness or injury, and under the Regular and Appropriate Care of a Physician."  (AR at 724.)

13.   In a letter dated December 9, 2003, the Plan notified Plaintiff that they were reviewing all the information in their possession in order to certify continued eligibility, and requested that she should forward updated medical information. (AR at 46.)

14.   Because Plaintiff did not submit any additional documentation, Defendant again requested updated medical information on February 3, 2004, March 3, 2004, and April 20, 2004.  (AR at 23, 34-35, 37.)

15.   Dr. Vaugh Cohan, M.D., a specialist in neurology, conducted a peer review on May 29, 2004.  After reviewing all of the evidence Plaintiff had submitted, he concluded that Plaintiff was only disabled from February 14, 2003, the date of her back surgery, until June 2, 2003, the date that her brace was removed.  Dr.

4

Cohan found that, aside from that period, the evidence failed to support restrictions that would preclude her from performing the essential duties of her occupation.  (AR at 129-32.)

16.  The Plan notified Plaintiff, in a letter dated June 24, 2004, that in order to maintain eligibility, she should forward any documentation that would prove her inability to work outside the time frame outlined by Dr. Cohan.  (AR at 136-39.)

17.  As permitted by the Plan, Plaintiff was referred for a Functional Capacity Evaluation ("FCE") conducted on July 13, 2004, which concluded that "she would be employable in some capacity.  An appropriate position for Ms. Stano would fall in the sedentary-light category of work."  The evaluation further noted that "[d]ue to a combination of self-limiting behaviors and noted inconsistencies (see page two) this report may not accurate depict the worker's actual physical capacities."  The FCE also noted that "[o]ther than verbal reports, there was minimal pain behaviors observed.  Verbal pain reports were diffuse and inconsistent with regards to location and quality."  (AR at 145.)

18.  Dr. Cohan performed a second peer review in light of the FCE, and reaffirmed his conclusion that, because of Plaintiff's self-limiting behaviors and inconsistencies during the FCE, that evaluation "does not demonstrate objective evidence that the claimant is functionally impaired with respect to her own medium level physical demand occupation."  (AR 171-72.)

19.  In a letter dated October 5, 2004, Defendant notified Plaintiff of its decision to terminate her disability benefits effective October 31, 2004.  (AR at 174-76.)

20.   Plaintiff appealed the denial on October 13, 2004, without submitting any
      updated medical information.  (AR at 482-83.)

21.   The Plan acknowledged her appeal and requested that she immediately forward
      any information that would support her appeal.  (AR at 195.)

22.   On October 27, 2004, the Plan notified Plaintiff that it was placing her appeal on
      hold until she forwarded additional medical information, and informed Plaintiff
      that if she needed additional time to submit the documentation, she should let
      them know before November 22, 2004.  (AR at 527.)

23.   On November 23, 2004, Plaintiff requested an additional 30 days to submit
      medical information.  (AR at 543.)

24.   On November 30, 2004, the Plan acknowledged her request, and indicated that
      all documentation must be submitted by December 23, 2004.  (AR 543.)

25.   On January 6, 2005, the Plan submitted all the medical information it had
      received to date from Plaintiff to Dr. Martin Mendelssohn, a specialist in
      orthopedic surgery, for another peer review.  Dr. Mendelssohn concluded that
      Plaintiff was not disabled.  (AR 551-53.)

26.   On January 24, 2005, the Plan received new medical information that Plaintiff
      sent on January 19, 2005.  (AR at 484-85, 548.)

27.   Accordingly, the Plan ordered a peer review addendum, and submitted the
      additional information to Dr. Mendelssohn.  He concluded that the new
      documentation did not support her appeal for long-term disability benefits.  (AR at
      554-56.)

28.    The Appeal Committee upheld the termination of benefits in a letter dated

February 3, 2005, because the record evidence did not "substantiate a significant

functional impairment that would have prevented Ms. Stano from performing the

essential functions of her own or any other Gainful Occupation."  (AR at 747-48.)

## III.  CONCLUSIONS OF LAW AND APPLICATION OF FACTS TO THE LAW

The issue before the court is whether Defendant's plan administrator's decision

to terminate Plaintiff's long-term disability benefits was arbitrary and capricious.  Plaintiff

asserts that the decision to terminate her benefits was arbitrary and capricious for a

number of reasons, which the court will address below.

### A.  Subjective Complaints of Pain

First, Plaintiff contends that Defendant's termination of Plaintiff's long-term

disability benefits was arbitrary and capricious because "Defendant failed to discuss or

consider in any reasoned manner the subjective complaints of pain expressed by

Plaintiff to her treating physicians."  (Pl.'s Proposed Findings of Fact at 15.)  A cursory

reading of Dr. Cohan's initial peer review, however, reveals that he noted Plaintiff's

subjective complaints of pain both before her spinal fusion[1] and after.[2]  The fact that Dr.

---

[1] "She presented with [sic] a history of chronic low back pain . . . the claimant began to report increasing back pain . . . she continued to experience pain with occasional radiation into the right thigh . . . the claimant continues to report back pain with radiation into the lower extremities."  (AR at 130.)

[2] The report stated that

[S]he reported still some [sic] back pain and some pain in the back of her thigh, but this pain was not severe . . . Dr. Mahmood stated that the claimant feels better and does not have severe pain.
. . .
the claimant was on analgesics and muscle relaxant medications for pain in her low back and right lower extremity . . . the claimant was issued a

7

Cohan ultimately found no objective evidence to substantiate these claims and determined that Plaintiff was not disabled does not support the conclusion that he failed to consider in a reasoned manner Plaintiff's complaints of pain.

Similarly, Dr. Mendelssohn reported that Plaintiff complained of pain both before[3] and after[4] her spinal fusion. Like Dr. Cohan, Dr. Mendelssohn also compared these self-reported complaints of pain to the objective medical reports and the treating physicians' conclusions, and determined that "[t]he claimant's subjective complaints do not preclude her ability to work." (AR at 496.) Dr. Mendelssohn came to the same conclusion in his second review, after considering even more documentation regarding Plaintiff's subjective complaints of pain.[5] Accordingly, Plaintiff's claim that "defendant

---

TENS by the pain management physician.

(AR at 130-31.)

[3] "[C]laimant . . . has a history of chronic low back pain . . . complained of persistent symptomatology . . . was treated with interventional therapy without any improvement . . . still complaining of severe back pain." (AR at 495.)

[4] The report stated that

post operatively the claimant continued to have symptoms although it was noted on 03/31/03 that the claimant's back symptoms were not as severe and that x-rays showed that the screws were in good position and that fusion was progressing. . . . claimant was feeling better. She did not have severe pain. . . . A Functional Capacity Evaluation . . . reported low back pain and fatigue.
. . .
The claimant's subjective complaints do not preclude her ability to work.

(AR at 495-96.)

[5] Dr. Mendelssohn reported that "the claimant was still complaining of chronic back pain and that she had difficulty going up the stairs. The right side of her hip and lower back hurts. She also has pain in the lower back which causes her to wake up." (AR at 555.)

completely discounted, without discussion, the Plaintiff's prolonged history of pain,"
(Pl.'s Mot. at 18) is belied by the record. The administrative record conclusively shows
that Defendant was aware of, and discussed and evaluated Plaintiff's subjective
complaints of pain.

Moreover, Defendant does not even dispute that Plaintiff may actually suffer from
pain. Defendant simply contends that the objective evidence does not support Plaintiff's
claim that the pain functionally incapacitated her. *See Brown v. National City Corp.*, No.
97-6130, 1998 WL 787084 (6th Cir. Oct. 29, 1998) (finding that when a treating
physician's opinion is based on the patient's subjective complaints of pain, the
physician's opinion does not constitute objective medical evidence, and is not a basis
for overturning a denial a disability benefits); *Bauer v. Metropolitan Life Ins. Co.*, 397 F.
Supp. 2d 856, 865 (E.D. Mich. 2005) (rejecting plaintiff's claims that the reviewing
doctor "'virtually ignored' her anxiety and depression" when the reviewing doctor did
mention, but ultimately discounted, her self-reported claims because they were
unsupported by objective records). Therefore, Plaintiff's allegation that Defendant failed
to discuss "the possible causes of Plaintiff's pain, including the possibility that it is the
result of surgical scarring," (Pl.'s Mot. at 18) is irrelevant. *See Bauer*, 397 F. Supp. 2d
at 865 (finding that because "the plan provisions at issue define disability in terms of
functional limitations that prevent an employee from performing her job," then "[t]he
question of disability is an assessment of what the employee can and cannot do, not
what she does and does not suffer from").

### B. Social Security Disability Benefits Award

Second, Plaintiff contends that Defendant's decision was arbitrary and capricious because Defendant "failed to discuss or otherwise consider Plaintiff's qualification for social security disability benefits." (Pl.'s Proposed Findings of Fact at 15.) Plaintiff does recognize that "the SSA's disability determination does not, standing alone, require the conclusion that [the defendant's] denial of benefits was arbitrary and capricious." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Instead, the SSA award is "just one factor the Court should consider, in the context of the record as a whole, in determining whether [Defendant's] contrary decision was arbitrary and capricious." *Id*.

Plaintiff contends, however, that *Glenn v. Metlife*, 461 F.3d 660 (6th Cir. 2006) found that it is arbitrary and capricious to deny ERISA benefits when the SSA has already awarded benefits under a more stringent standard. (Pl.'s Mot. at 16.) Plaintiff also argues that the SSA's standard of disability is more stringent than the Plan's standard because the social security standard does not take into consideration the location of the applicant or her past earnings. (*Id.*) Therefore, Plaintiff asserts that Defendant's failure "to reconcile the findings of the social security administration that Plaintiff was disabled since December 21, 2002 under the much more stringent social security standard of disability" renders Defendant's decision arbitrary and capricious. (Pl.'s Mot. at 9.) Plaintiff fails to recognize, however, that even the *Glenn* court found that the defendant's apparent failure to even consider the SSA's finding of disability "does not render the decision arbitrary per se, but is obviously a significant factor to be considered upon review." *Glenn*, 461 F.3d at 669.

Furthermore, the differences that Plaintiff articulates, that the SSA standard does not take into consideration the location of the applicant or her past earnings, (Pl.'s Mot. at 16) are unimportant in cases like this where Defendant found that Plaintiff was ineligible for benefits because she was able to perform her old job, and therefore never relied on the portions of the disability definition that are allegedly more lenient.

Therefore, while a SSA determination is relevant, and should be considered in an ERISA disability benefits determination, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life and Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005); *see also Hurse v. Hartford Life and Accident Ins. Co.*, 77 F. App'x 310, 318 (6th Cir. 2003) (finding that the mere fact that the defendant's conclusion "differs from that of the ALJ does not make it arbitrary and capricious" when "[t]he medical evidence . . . was clearly susceptible to opposite conclusions as to the nature of [the plaintiff's] disability").

Plaintiff further contends that Defendant's failure to expressly consider the SSA's decision is especially significant because "Defendant required the application for benefits, paid for a firm to assist Plaintiff in the application and received a dollar for dollar reimbursement from Plaintiff's social security benefits for benefits paid by Defendant to Plaintiff and owing in the future to Plaintiff."  (Pl.'s Proposed Findings of Fact at 15.)  Plaintiff claims that *Glenn* and *Darland v. Fortis Benefits Insurance Co.*, 317 F.3d 516 (6th Cir. 2003), hold that Defendant's decision "to encourage application for social security benefits where it benefits the plan and then to repudiate the finding of the social security administration where it benefits a the [sic] plan to do so casts considerable doubt on the adequacy of the plan's evaluation of a claim."  (*Id.* at 14.)

11

It is clear that the Plan required Plaintiff to apply for social security disability benefits to offset the benefits paid by the Plan, and provided her assistance in doing so. (AR 737, 739.)  It is also clear, however, that *Darland* does not compel "the administrator to explicitly distinguish a favorable SSA determination when denying plan disability benefits," but instead simply "recognized a unique situation where it would be inconsistent for a plan administrator to *ignore* the SSA's favorable determination, after the administrator had expressly requested the claimant to apply for SSA benefits." *Whitaker*, 404 F.3d at 949 (emphasis added); *see also Calvert*, 409 F.3d at 295 ("It is apparent, accordingly, that while *Darland* and *Ladd* counsel a certain skepticism of a plan administrator's decision-making on facts such as those at issue here, they do not stand for the proposition, urged by [the plaintiff], that a plan administrator is conclusively estopped from disagreeing with an SSA award whenever the plan benefits from such an award.").

Moreover, it is unclear that Defendant ignored the SSA's decision.  The Sixth Circuit has found unpersuasive the argument that a defendant's "silence with regard to the SSA record and findings is evidence that it did not consider them."  *Hurse*, 77 F. App'x at 318.  Furthermore, *Nord's* holding that the SSA's decision is only one factor for the court to consider "is also true when the insurer requires the insured to apply for social security disability benefits."  *Noland v. The Prudential Ins. Co. of Am.*, 187 F. App'x 447, 453-54 (6th Cir. 2006) (internal citations omitted).

The court agrees that Defendant should have considered the SSA's decision generally in making its determination.[6]  Even if Defendant completely failed to consider the SSA's decision, and it is not clear that it did, this is only one factor for the court to consider.  *See Glenn*, 461 F.3d at 669.  Because Defendant has offered a "reasoned explanation, based on the evidence, for [its] outcome, that outcome is not arbitrary or capricious."  *Davis*, 887 F.2d at 693.

### C.  Relevant Records

Plaintiff initially argued that "Defendant failed to provide all of the relevant records to its reviewing physicians thereby rendering a decision based on those reviews arbitrary."  (Pl.'s Proposed Findings of Fact at 15.)  Specifically, Plaintiff claims that the following documents were omitted from Dr. Cohan's first review: (1) Plaintiff's May 4, 2004 visit to Dr. Smerek; (2) Plaintiff's September 11, 2003 visit to Dr. Smereck; and (3) Plaintiff's October 28, 2003 visit to the Henry Ford Hospital Management Center.  (Pl.'s Mot. at 8-9.)

As Defendant points out in its motion, the reason that Defendant did not consider these documents until the second review on appeal was that Plaintiff failed to provide Defendant with these documents before that time, (AR 548, 569-70, 577, 582) despite the fact that Defendant repeatedly requested updated medical records and continued to extend deadlines to allow Plaintiff to submit them, (AR at 554-56).  Even after giving Plaintiff ample opportunity to provide the documents before Defendant denied Plaintiff's

---

[6] To the extent that Plaintiff is also contending that Defendant should have reviewed evidence from the SSA proceeding, Plaintiff herself admits that there was no hearing, and therefore no hearing transcript to review.  (Pl.'s Reply at 4.)  Furthermore, Plaintiff represented that the documents she provided to Defendant in January 2005 were copies of the records examined by the SSA.  (AR at 484.)

appeal, it accepted documents Plaintiff submitted on January 24, 2005 and had the second reviewing physician reconsider his conclusions in light of the additional documentation.  (AR at 554-56.)

Contrary to Plaintiff's original contention, the court finds that Defendant not only considered all the documents Plaintiff provided, but went well beyond what would be considered necessary or fair to provide Plaintiff with every opportunity to demonstrate that there exists objective evidence to support her claim of disability.

### D.  Independent Medical Examination

Plaintiff additionally claims that Defendant's decision was arbitrary and capricious because Defendant relied on a file review in making its determination, and did not conduct "an orthopedic and/or neurological exam," despite the fact that it was able to do so under the Plan, and Dr. Mendelssohn indicated that this exam "would be *necessary* to fully evaluate Plaintiff's functional capacity."  (Pl.'s Mot. at 18 (emphasis added).) Plaintiff does recognize that "[t]he failure of a plan to conduct an independent medical examination when it is permitted by the plan, and instead relying on a file review does not render a denial of benefits *per se* arbitrary, but it is another factor that must be considered in the overall assessment of whether the decision making process was arbitrary and capricious."  (Pl.'s Mot. at 17 (citing *Calvert*, 409 F.3d at 295; *Glenn*, 461 F.3d at 667).)  Plaintiff argues, however, that Defendant's decision to utilize only a file review "raise[s] questions about the thoroughness and accuracy of the benefits determination."  *Calvert*, 409 F.3d at 295.

While Defendant does not contest the fact that the Plan would allow such an exam, (AR at 735) Defendant submits that Plaintiff significantly mischaracterizes Dr.

14

Mendelssohn's statement.  In both of his reports, Dr. Mendelssohn finds that "[f]or reevaluation of the claimant's functional impairment, a current comprehensive orthopedic/neurological evaluation with objective clinical findings and any supporting diagnostic test would be *helpful*."  (AR at 496 (emphasis added).)  Defendant's decision not to conduct any additional evaluations is further supported by Dr. Cohan's finding in his second peer review that "[n]o additional clinical documentation is necessary in further consideration of this claim."  (AR at 172.)

The court agrees that a doctor's conclusion that a certain test would be helpful in reevaluating a patient's functional impairment is significantly different than a doctor's finding that he is unable to properly evaluate a patient's functional capacity without that test.  Because Dr. Mendelssohn merely indicated the former, and had no difficulty concluding that Plaintiff was able to work as a nurse despite not having the proposed examination, Defendant's decision not to perform an orthopedic or neurological exam was neither arbitrary nor capricious.  *See Noland*, 187 F. App'x at 453-54 (finding that the defendant's decision to terminate benefits was not arbitrary or capricious despite the contrary SSA decision and the fact that the defendant replied on a file review rather than a physical examination).  Because the court finds that Defendant's review was "otherwise thorough," Defendant's "failure to examine a claimant is not fatal to a denial decision."  *Bauer*, 397 F. Supp. 2d at 866 (citing *Kalish v. Liberty Mutual*, 419 F.3d 501, 510 (6th Cir. 2005)).

### E.  Plaintiff's Physical Limitations

Plaintiff also contends that "Defendant's decision to terminate benefits is clearly arbitrary in that the record is replete with indications that Plaintiff has significant

15

limitations in lifting, carrying, walking, standing, pushing and pulling, squatting and kneeling, which appear to prohibit medium work." (Pl.'s Proposed Findings of Fact at 15.) Defendant does appear to concede that Plaintiff's former position as a nurse is appropriately characterized as a medium work position. Occupations in the medium category of work require occasional lifting of fifty pounds, frequent lifting of twenty pounds and constant lifting of ten pounds. (AR at 152.) The FCE concluded that Plaintiff was able to lift thirty pounds, except Plaintiff was only able to lift twenty-five pounds over her head. (AR at 147.) Twenty-five to thirty pounds is greater than the weight required by medium work on a frequent basis. (AR at 152.) The FCE specifically noted that these lifting limitations were due to "[r]eported low back symptoms," "[l]imited physical endurance (fatigue)," "[s]elf-limiting due to reported symptoms" and "[p]hysical guarding," (AR at 147) and Plaintiff's "<u>actual</u> physical capacities" may be higher, (AR at 145).

Plaintiff claims that "[t]he functional capacity evaluation concludes that at best Plaintiff could perform jobs in a sedentary-light category, which is below her job requirements for medium work, and which would provide for limitations in lifting, carrying, standing, pushing and pulling, squatting and kneeling, and overhead reaching." (AR at 163-70.) The actual functional capacity evaluation, however, merely states that Plaintiff "demonstrated the capacity to perform tasks in the LIGHT to LIGHT-MEDIUM category of work," and recommended that "she should be employable in some capacity. An appropriate position for Mrs. Stano would fall in the SEDENTARY-LIGHT category of work." (AR 163.) Furthermore, the evaluation emphasizes that "[d]ue to a combination

16

of self-limiting behaviors and noted inconsistencies (see page two), this report may not accurate depict the worker's <u>actual</u> physical capacities."  (AR at 163.)

Defendant's decision to credit the examiner's skepticism and conclude that Plaintiff was capable of performing medium, rather than light-medium work, was not arbitrary or capricious.  This is especially true in light of Dr. Cohan's conclusion that the FCE "suggest[s] that she is most likely capable of medium level work, and there is no objective evidence of a functional impairment which would preclude her from performing the essential elements of her own occupation as a home health registered nurse."  (AR at 171.)

Dr. Mendelssohn also carefully examined the FCE and determined that while "repetitive lifting, bending and stooping would be reasonable restrictions and limitations and should be considered permanent," (AR at 496) "a functional impairment that would preclude the claimant from her regular occupation as a nurse which is a medium physical exertion level or any occupation from 11/01/04 through present cannot be substantiated."  (AR at 496.)  Dr. Mendelssohn based his conclusion "on medical documentation , [sic] the lack of any significant objective findings as well as a Functional Capacity Evaluation which indicates that she had self limiting behavior."  (AR at 496.)  Dr. Mendelssohn came to the same conclusions after reviewing additional documentation provided by Plaintiff.  (AR at 555.)  Plaintiff characterizes as inconsistent Dr. Mendelssohn's acknowledged restrictions and his conclusion that the objective evidence failed to support Plaintiff's claim that she could not return to her job as a nurse.  (Pl.'s Mot. at 11.)

The court disagrees with Plaintiff's assertion that Dr. Mendelssohn's finding regarding Plaintiff's limitations findings "appears to preclude work at a medium level of exertion." (Pl.'s Reply at 3.)  While it is true that Dr. Mendelssohn's generalized finding that Plaintiff is permanently restricted from repetitive lifting, bending or stooping, viewed in isolation, could suggest this conclusion, in the context of Dr. Mendelssohn's entire report, it is clear that his findings do not "appear" to do anything of the sort.  Dr. Mendelssohn specifically concluded that "a functional impairment that would preclude the claimant from her regular occupation as a nurse which is a medium physical exertion level or any occupation from 11/01/04 through present cannot be substantiated." (AR at 496.)

Furthermore, Plaintiff's position that "Dr. Mendelssohn's claim that Plaintiff can return to her former employment is further undermined by his acknowledgment that he cannot comment on Plaintiff's current level of functional impairment without a current comprehensive orthopaedic or neurological evaluation," (Pl.'s Reply at 3-4) is unconvincing for the reasons the court has discussed above.

And while Dr. Mahmood, Plaintiff's treating physician, did restrict Plaintiff to light work in June 2003, he also indicated that she was improving, her prognosis was good and he expected "fundamental changes in [Plaintiff's] medical condition" in five to six months.  (AR at 74.)  Furthermore, even Dr. Mahmood characterized the severity of Plaintiff's symptoms as "not significant," stated that "[s]he does not have severe pain," and found that her "[m]otor strength is normal." (AR at 73.)

Plaintiff's other treating physician, Dr. Smereck, "issued a return to work note on September 11, 2003 indicating that the claimant could return to work with restrictions as

18

to lifting no greater than 20 lbs and no repetitive squatting, bending, or lifting. These restrictions were to remain in effect until March 11, 2004." (AR at 171.) However, Dr. Cohan discounted these conclusions because "[t]here is no documentation to justify the above-mentioned restrictions, and it would be anticipated that in the uncomplicated circumstance an individual having undergone a lumbar fusion as described would be expected to return to a medium level physical demand occupation within more than 3 months time." (AR at 171.) Accordingly, Dr. Cohan concluded that "[t]he claimant should certainly have been capable of returning to full duty prior to June 2, 2003 absent any significant surgical complications and/or any significant abnormal neurologic or orthopedic physical examination findings." (AR at 171.)

"The Sixth Circuit has held that the plaintiff in an ERISA benefits case bears the burden at all times in proving continuous disability as defined by the plan." *Bauer*, 397 F. Supp. 2d at 864 (citing *Miller*, 925 F.2d at 984). Defendant reasonably determined that Plaintiff did not meet her burden. *See Yeager*, 88 F.3d at 381 ("The Plan required plaintiff to submit satisfactory proof that she could not perform the material duties of her regular occupation, and defendant had received no medical evidence of any physical condition or anatomic abnormality that would cause plaintiff to be totally disabled.").

In conclusion, while there may have been evidence supporting the position that Plaintiff was disabled under the Plan definition, there was certainly also evidence supporting the position that Plaintiff was not disabled. Two separate independent peer reviewers examined Plaintiff's medical file twice each, and each time both reviewers only found objective evidence supporting Plaintiff's claim of disability between February 13, 2003 and June 3, 2003. In reviewing the administrative record, including

19

evaluations from Plaintiff's treating physicians and the FCE, the court cannot find that Defendant's decision to deny Plaintiff disability benefits was either arbitrary or capricious because Defendant offered a "reasoned explanation, based on the evidence," for its denial. *See Davis*, 887 F.2d at 694.

### F. Earnings Requirement

Finally, Plaintiff asserts that Defendant's decision to terminate her benefits was arbitrary and capricious because Defendant did not consider "Plaintiff's ability to earn 60% of her predisability income," which "is clearly a requirement for a finding of no disability." (Pl.'s Proposed Findings of Fact at 15.) The Plan's definition of disability clearly states that "disability" is defined as a condition that "prevents you from performing the essential functions of your regular occupation or of a reasonable employment option offered to you by the employer and as a result you are unable to earn more than 60% of your pre-disability monthly income." (AR at 719.) The Plan does not say, as Plaintiff intimates, that she is disabled merely because she is unable to earn 60% of her pre-disability income.

Because the reviewers found, at every stage of Plaintiff's application and appeal, that Plaintiff was not prevented from performing the essential functions of her regular occupation, Defendant was not required to also consider whether Plaintiff was able to earn 60% of her pre-disability income.

### IV. CONCLUSION

Plaintiff's claim for long-term disability benefits was reviewed by two competent, independent peer reviewers who each examined Plaintiff's claim twice, and offered thorough, reasoned explanations for their conclusion that Plaintiff's claim of disability

under the Plan was unsubstantiated.  These reviewers discussed and considered Plaintiff's subjective claims of pain, Plaintiff's treating physician's statements and conclusions, the FCE and all of the other medical records Plaintiff provided.  While the reviewers failed to explicitly state that they considered the fact that Plaintiff had been awarded social security disability benefits, that factor alone does not render Defendant's decision arbitrary and capricious.  Accordingly,

IT IS ORDERED that Defendant's October 19, 2006 "Motion for Entry of Judgment" [Dkt. #22] is GRANTED and Plaintiff's September 28, 2006 "Motion for Judgment on the Administrative Record" [Dkt. #18] is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 18, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 18, 2007, by electronic and/or ordinary mail.

S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522